Bernard S. Meyer, J.
Motion and cross motion for summary judgment in an action brought pursuant to article 15 of the Real Property Law.
The plaintiff Long Island Lighting Company is the OAvner of waterfront property in Northport, Suffolk County. A predecessor in title, Metropolitan Sand and G-ravel Company (hereafter “Metropolitan”), a New York corporation, acquired title to upland fronting on the Long Island Sound in 1928. In July, 1929 letters patent were granted to Metropolitan by the State of New York to underAvater land. This underwater grant • extended along the mean high-water mark about 502 feet and into the sound about 1,500 feet. As a condition of the grant it was provided and directed that a channel be dredged to a sheltered basin or harbor and that breakwaters be constructed on both sides of the channel. By 1934 the channel and the breakwaters were constructed. The breakwater to the west of the channel was 300 feet long and the breakwater to the east of the channel was 900 feet long. Since these breakwaters were erected there has been a change in the littoral land to the west of the westerly breakwater and to the east of the easterly breakwater. To the west, 3,287 acres of upland are now covered by water, but to the east 12.25 acres of land are now exposed which were formerly under water. Of the 12.25 acres to the east of the easterly breakwater, the OAvnership of 11.36 acres is in dispute in this action.
The plaintiffs contend that there was a gradual increase of earth on the shore east of the easterly breakwater caused by the force of the Avind, waves, or tide — or as frequently called, an accretion or alluvion. The defendant in its answer contends that the increase in land was the result of the placement of certain barges on the east side of the channel — that the barges interfered with the natural and normal action of the Avind, waves and current.
*981 In support of the motion, the plaintiffs submit exhibits and an affidavit of a witness. These documents clearly show that the increase of the land was gradual over a 25-year period. The defendant, on the other hand, submits no affidavit by a person with knowledge of the facts or any exhibit to contradict the evidence submitted by the plaintiffs. An attorney representing the defendant on this motion made an affidavit which shows an inspection by him of the shorefront in 1958 — after this action was commenced. It is his conclusion that the accumulated land was caused by avulsion rather than accretion, but there is no evidence, nor does the defendant contend that it can produce any evidence at the trial, to support that conclusion. “ The purpose of summary judgment procedure is to search out the evidentiary facts and determine the existence of an issue from them. Bald conclusory assertions, even if believable, are not enough. Bald conclusory assertions, which defy reality and are inconsistent with the pattern of events, are even less so.” (Kramer v. Harris, 9 A D 2d 282, 283.)
The court holds as a matter of law that the accumulated land was a gradual imperceptible change caused by the wind, waves and tides. The sole remaining question is: If the accretion was caused in part by the erection of the breakwater, is the plaintiff owner of the upland denied the ownership of the accumulated land because its predecessor in title erected the breakwater!
The State in its underwater grant of 1929 directed the construction of breakwaters to protect the channel which was to be dredged. Although experts who appeared on behalf of the owner expressed the belief prior to the grant that the breakwaters would have no effect on the beaches, other experts who were employed by the State asserted that there would probably be some accretion. It cannot be held that the State was deceived by the Metropolitan’s experts or that the purpose of the Metropolitan in erecting the breakwater was to affect the shoreline to the east and to the west of the breakwaters.
If the upland bordering the accumulated land had been owned down through the years by a stranger, Metropolitan’s erection of the breakwaters would not deprive the stranger of ownership of the alluvion (Halsey v. McCormick, 18 N. Y. 147, 150; Matter of Hutchinson Riv. Parkway Extension, 14 N. Y. S. 2d 692, mod. as to amount of interest 260 App. Div. 999, affd. 285 N. Y. 587). The California authorities (Carpenter v. City of Santa Monica, 63 Cal. App. 2d 772 [1944]; Los Angeles Athletics Club v. City of Santa Monica, 63 Cal. App. 2d 795) cited by the defendant are not consistent with the New York opinions cited above. Moreover the recent opinion, cited by the plaintiffs (Kinney *982 Co. v. City of Los Angeles, 340 P. 2d 14 [Cal. Dist. Ct., 1959]) indicates that a view consistent with that expressed in the Hutchinson Riv. Parkway case (supra) is now held by the California courts. While research has not revealed any New York case in point, the fact that the upland owner is the same person or corporation that erected the breakwater should not require a different rule of law where the breakwater was erected for a lawful purpose and the accretion was merely an incidental development.
Accordingly, the motion is granted and the cross motion denied. Settle order on notice.